# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; THE DISTRICT OF COLUMBIA; GUAM, PUERTO RICO, AND THE U.S. VIRGIN ISLANDS, <br><br> *ex rel.* LEONARDO S. SORGI, <br><br> Plaintiffs, <br><br> v. <br><br> JAZZ PHARMACEUTICALS PLC, JAZZ PHARMACEUTICALS, INC., and JAZZ PHARMACEUTICALS IRELAND LIMITED, <br><br> Defendants. | Civil Action No. 21-10891-PBS <br><br> Judge Patti B. Saris <br><br> **REQUEST FOR ORAL ARGUMENT** <br><br> **Leave to file granted on November 25, 2024 (Dkt. 69)** |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF-RELATOR'S COMPLAINT

**INTRODUCTION**

In his Opposition, Relator attempts to salvage his Amended Complaint by skirting around the facts. But he has not adequately alleged any false claim for payment. His threadbare allegations flunk Rule 9(b)'s particularity requirements. And his alleged fraud was publicly disclosed. These deficiencies warrant dismissal with prejudice.[1]

**I.     RELATOR FAILS TO PLEAD ESSENTIAL ELEMENTS OF HIS CLAIMS.**

Relator claims to have established falsity through the following theories: (1) false statements to the PTO and PTAB; (2) fraudulent inducement; and (3) false certifications. Opp. at 5. But he does not sufficiently allege any of these theories.

**A.     Relator fails to plead a false statement theory of falsity.**

False statements are actionable under the FCA only if they were included with a false claim for payment to the government. *New York v. Amgen Inc.*, 652 F.3d 103, 110 (1st Cir. 2011). In other words, a false statement standing alone does not generate a "false claim" under the FCA. Because the PTO and PTAB have not paid any of the alleged false claims for Xyrem® at issue in this case, the only way for Relator to "link" the alleged false statement to those claims is through his fraudulent inducement or false certification theories. *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016).

**B.     Relator fails to plead fraudulent inducement.**

Relator paints fraudulent inducement under the FCA as an expansive theory that "applies whenever fraud leads to government payments." Opp. at 11. But courts in this Circuit, consistent with other courts, reject such expansive application, characterizing fraudulent inducement as a "narrow" theory to be applied only in "rare" circumstances. Br. at 14; *see also Universal Health*

---

[1] All capitalized terms not otherwise defined in this brief have the same meaning ascribed to them in Jazz's opening brief, Dkt. 72.

*Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016) ("False Claims Act is not 'an all-purpose antifraud statute.'"). This Court should follow that precedent and decline to apply the fraudulent inducement theory outside of the context of direct contractual relationships. Br. at 14-15; *see also U.S. ex rel. Yu v. Grifols USA, LLC*, 2021 WL 5827047, at *11 (S.D.N.Y. Dec. 8, 2021). *D'Agostino* does not demand otherwise. *See* 845 F.3d at 9 (assuming but not deciding that fraudulent inducement on FDA is a viable FCA theory).

Even if this Court were inclined to recognize that such a theory *could* be viable outside of direct contractual relationships, it still fails here. First, all of Relator's allegations and theories of falsity boil down to the contention that Jazz fraudulently obtained a patent that was "plainly invalid and unenforceable," but Relator has not pled this alleged underlying fraudulent conduct with sufficient particularity. Br. at 9. That's because to do so would require adequately alleging inequitable conduct, which he effectively admits he has not done. Opp. at 4-5. Relator's argument that he did not have to plead inequitable conduct, *id.*, ignores the rule that when FCA actions are predicated on underlying violations of law, plaintiffs are required to adequately plead the elements of that underlying violation of law. *See, e.g.*, *United States v. Teva Pharms. USA, Inc.*, 560 F. Supp. 3d 412, 421 (D. Mass. 2021).

Second, even if this Court finds that Relator does not have to plead inequitable conduct and can rely on more general allegations of false statements inducing the PTO to issue a patent, he still has not adequately pled specific false statements. Relator argues Jazz made false statements to the PTO because it "told the Examiner prior art 'does not teach or suggest that valproate could be combined with GHB, or what might be the effects of the two if combined.'" Opp. at 5 (quoting Dk. 63 ¶ 52). But Jazz's statement, by Relator's own admission, was just an argument about a specific piece of prior art raised by the Examiner: "Johnson does not teach or

suggest that valproate could be combined with GHB, or what might be the effects of the two if combined." Dkt. 63 ¶ 52. The same is true of Jazz's alleged false statements to the PTAB, Dkt. 63 ¶ 116—they all amount to arguments made by Jazz about what qualifies as relevant prior art and what it shows. Opinions such as this reflecting mere "legal argumentation and possibility" do not qualify as false statements under the FCA. *See* Br. 13-14 (citation omitted); *cf. Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("[A] prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct.").

Further underscoring that all of Jazz's alleged false statements were opinions is the fact that no determination has been made by PTO or PTAB that any of the alleged prior art cited by Relator is in fact relevant to the patent. And Relator concedes that the 2012 Label—which the Examiner considered prior to allowing other patents in the '306 family—is in fact not relevant. Opp. at 15. Though Relator claims that concession does not matter because the "gravamen of the fraud in this case is the withholding of the adverse event reports," *id.*, he cites no case establishing those reports qualify as prior art and even this Court has acknowledged their "significant limitations" in terms of reliability and accuracy, *In re Neurontin Mktg., Sales Pracs., & Prods. Liab. Litig.*, 612 F. Supp. 2d 116, 153 (D. Mass. 2009). The Court need not decide this issue though because even if the adverse event reports could constitute prior art that rendered Jazz's statements false, Relator's allegations still fail Rule 9(b)'s particularity requirement.

As required by Rule 9(b), Relator has not identified anyone at Jazz who believed the adverse event reports constituted prior art and then intentionally withheld those reports from the Examiner. *See U.S. ex rel. Beckham v. 1850 Bryant Land LLC*, 2023 WL 137467, at *3 (N.D. Cal. Jan. 9, 2023) ("[A]t no point does Relator describe who in particular within the Defendant organizations discussed executing the averred scheme, or when the 'secret backroom agreement'

3

was formed"). He also fails to allege the circumstances surrounding the alleged false statements, including the specific employees who made the alleged misrepresentations. *See, e.g.*, *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29–30 (1st Cir. 2004). Instead, Relator has only pointed to employees whom he believes had knowledge that the statements at issue were false. Dkt. 63 ¶¶ 153-60. That is not sufficient.

Finally, Relator grapples neither with the "but for" causation standard imposed by *D'Agostino* nor the series of cases rejecting FCA complaints premised on attenuated, multi-step causal chains. Br. at 15-16. He also does not address the clear gap in his causal chain: "how the purportedly omitted prior art would have caused the Examiner to reject the '997 application." *Id.* at 15. Instead, citing no authority, he asserts in conclusory fashion that he has pled enough to establish causation. Opp. at 12. But that argument is insufficient as a matter of law and directly contradicted by the Examiner's consideration of the 2012 Label in connection with her allowance of the other patents in the '306 family. At most, Relator has alleged that Jazz's conduct "'could have' influenced" the PTO/PTAB's decision, which is not sufficient to allege causation. *D'Agostino*, 845 F.3d at 7.

That the '306 patent has never been invalidated bears on this Court's analysis of every element of Relator's claims, and particularly on causation. The First Circuit has expressly held that fraudulent inducement claims are futile unless the relator can show "some official agency action" confirming causation. *Id.* at 9. Relator has not pled any such agency action.

**C.      Relator fails to plead express or implied false certification.**

Relator misunderstands what is required to allege an express false certification. Opp. at 13. Alleging an express false certification unconnected to a claim for payment is not enough; rather, he must allege that the false certification was submitted in connection with a claim for payment, which he does not (and cannot) do. Br. at 16-17. The same issue arises even if this

4

Court were to entertain Relator's new argument that Form 3542 qualifies as a false record. Opp. at 13. False records are still only actionable if "made as part of a false or fraudulent claim," *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018), and Relator does not allege that Jazz submitted or caused the submission of a Form 3542 with any claim for payment.

Nor does Relator adequately allege an implied false certification. First, he does not address the Medicaid Penalty Provision representation and therefore has waived any implied false certification argument with respect to that provision. *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 177 (D. Mass. 2013) (deeming waived claims challenged in a motion to dismiss but unaddressed in the opposition). Second, Relator's arguments as to the FSS "Fair and Reasonable" representation reveal his misunderstanding of what is required to allege an implied false certification under *Escobar*. Opp. at 13-14. Relator must allege that the specific representation rendered false through the violation of law was included in the claim for payment, which he does not (and cannot) do. Br. at 18. Third, Relator does not rebut Jazz's arguments regarding his misunderstanding of what the term "fair and reasonable" actually means. *Id.* at 19. Fourth, Relator does not dispute that claims allegedly rendered false thereunder would not include Medicare and Medicaid claims because those programs do not utilize FSS pricing. *Id.*

### D.    Relator fails to plead materiality.

Relator's allegation that "[t]he price of a good that a government pays is *per se* material to the government's payment decision," Dkt. 63 ¶ 145, remains conclusory and insufficient as a matter of law to establish materiality. *Universal Health Servs.*, 579 U.S. at 193-94.

### E.    Relator fails to plead submission of a false claim.

Relator cites two inapposite cases, *Gose v. Native American Services Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024) and *In re Baycol Products Litigation*, 732 F.3d 869, 876 (8th Cir. 2013), for the proposition that he does not have to allege details regarding the submission of

5

false claims under his fraudulent inducement theory. *See* Opp. at 19. The relators in both of those cases alleged fraudulent inducement of a *contract*, however, so *all* claims submitted pursuant to the contract were tainted. Here, no contract is involved, and Relator acknowledges that something less than 100% of Xyrem® claims were tainted by the alleged fraud, Br. at 21, so additional details are required to adequately allege fraud, including additional details regarding the entrance of generic manufacturers into the market. Though Relator contends otherwise, *see* Opp. at 19, *U.S. ex rel. Bawduniak v. Biogen Idec, Inc.* actually supports Jazz's position. There, the Court dismissed all state counts "for which no claims have been specifically pled." 2018 WL 1996829, at *7 (D. Mass. Apr. 27, 2018). Here, Relator has not pled which state Medicaid programs cover Xyrem®, much less the programs to which false claims were allegedly submitted.

### F.  *Allergan* and *Janssen* do not support Relator's theory of fraud.

Relator repeatedly cites *United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212 (D.N.J. 2021) and *United States ex rel. Silbersher v. Allergan Inc.*, 506 F. Supp. 3d 772 (N.D. Cal. 2020) for the proposition that other courts have allowed his theory of fraud to proceed. Opp. at 11, 14, 16, 20. But these cases are inapposite.

*Janssen* is distinguishable for two reasons. First, unlike the patent at issue in *Janssen*, the '306 patent was never invalidated. That fact was critical to the *Janssen* court's finding that the relator had pled falsity with particularity and reinforces Jazz's causation arguments. *See* 576 F. Supp. 3d at 231. Second, unlike in *Janssen*, Relator makes no allegation that Jazz's alleged misrepresentations were the "single most reasonable explanation" for the PTO's approval of the '306 patent, *id.* at 219, which informed the Court's conclusion as to the materiality of the misrepresentation to the PTO's decision to approve the patent, *id.* at 229. Indeed, that particular allegation is foreclosed in light of the Examiner's consideration of the 2012 Label and the fact

that the 2012 Label and the corresponding 2012 Drug Safety Communication (two public documents) were not asserted in the IPR proceedings.

The district court's original decision in *Allergan* was ultimately reversed by the Ninth Circuit and then on remand the district court dismissed the case on public disclosure bar grounds because the alleged fraud was publicly disclosed in patent prosecution histories and the relator was not an original source. *Silbersher v. Allergan Inc.*, 2023 WL 2593777, *10-11 (N.D. Cal. Mar. 20, 2023), *aff'd on other grounds*, 2025 WL 325761 (9th Cir. Jan. 29, 2025). That was the right outcome. Moreover, in the district court's original decision, it allowed the relator to proceed on an expansive theory of fraudulent inducement, citing the Ninth Circuit's decision in *Campie*. *Silbersher v. Allergan Inc.*, 506 F. Supp. 3d 772, 825 (N.D. Cal. 2020). *D'Agostino* took a different approach, however, and it compels a different result.

## II. THE PUBLIC DISCLOSURE BAR PRECLUDES RELATOR'S CLAIMS.

### A. Relator incorrectly characterizes the public disclosure bar test.

Relator argues his alleged fraud was not publicly disclosed because "[p]rior to this case, nobody asserted that Jazz defended the validity of its patents by obscuring prior art." Opp. at 23. That misstates the public disclosure test in this Circuit, which instead looks to whether the alleged fraud can be inferred from qualifying public disclosures. Br. at 23.

With Relator's concession that the "gravamen of the fraud in this case is the withholding of the adverse event reports," Opp. at 15, the application of the public disclosure bar is straightforward. Accepting, arguendo, Relator's allegations, then the allegedly false set of facts—that Jazz never disclosed the adverse event reports to the PTO—is disclosed in the '306 patent prosecution history materials, which qualify as a channel (ii) disclosure.[2] Br. at 24. And

---

[2] Relator relies heavily on Ninth Circuit cases throughout his brief, yet asks this Court to ignore *Allergan*, 46 F.4th at 998, because it arrives at a conclusion on this issue he does not like. Opp. at 27.

7

the allegedly true set of facts—that the adverse event reports purportedly discussed coadministration of Xyrem® with valproate and a reduction in the dose of Xyrem®—was disclosed in the adverse event reports themselves. The Amended Complaint alleges this, Dkt. 63 ¶ 68, and, importantly, that these reports also disclosed the date by which Jazz was allegedly aware of them, *id.* ¶ 89. Relator's allegations lead to one conclusion: these reports qualify as a channel (ii) disclosure. Br. 24; *U.S. ex rel. D'Agostino v. ev3, Inc.*, 153 F. Supp. 3d 519, 531-32 & n. 27 (D. Mass. 2015) (finding adverse event reports qualify as public disclosures).

This combination of disclosures is enough to justify application of the public disclosure bar to Relator's claims. *D'Agostino*, 153 F. Supp. 3d at 531 ("The two states of facts may come from different sources, as long as the disclosures together lead to a plausible inference of fraud."). Here, however, the *Law360* article and the *Mealey's Litigation Report*, which qualify as channel (iii) disclosures, disclose the purported fraud itself by discussing how at least two generic manufacturers believed the '306 patent was obvious and invalid because of purported evidence of real-life coadministration of Xyrem® and valproate. Br. at 25. Even if this Court finds these articles do not publicly disclose the alleged fraud, they at a minimum publicly disclose additional details further supporting the *inference* of the alleged fraud. *See id.* at 22.

*Silbersher v. Valeant Pharms. Int'l, Inc.* does not dictate otherwise. In that case, the Court found that the public disclosure bar did not apply because a single public disclosure did not disclose that defendants took inconsistent positions during two patent prosecutions, even though this inconsistency was disclosed through a review of both patent prosecutions. 89 F.4th 1154, 1168 (9th Cir. 2024), *amending and superseding* 76 F.4th 843 (9th Cir. 2023). But the test in the First Circuit is whether: "[t]he allegations and transactions that comprised the essential elements of the claimed fraud were in plain sight after the[] disclosures." *U.S. ex rel. Winkelman v. CVS*

8

*Caremark Corp.*, 827 F.3d 201, 209 (1st Cir. 2016). In this case, Relator's theory of fraud supposedly took place fully "in plain sight" in light of: (1) generic manufacturers' arguments that the '306 patent is invalid based on evidence of coadministration; (2) the adverse event reports purportedly detailing evidence of coadministration and Jazz's knowledge of those reports; and (3) the absence of adverse event reports from the prosecution history of the '306 patent.

### B. Relator is not an "original source" of the public disclosures.

Though Relator claims otherwise, Opp. at 27-28, whether a relator is an original source is routinely decided on motions to dismiss, *see, e.g.*, *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412, 423-24 (D. Mass. 2015).

Relator cannot qualify because any pre-filing information he provided to the government was not "voluntarily provided." *See Omni Healthcare Inc. v. U.S. Oncology, Inc.*, 2024 WL 4751635, at *3 (2d Cir. Nov. 12, 2024). And analyzing public documents that are "complex, technical sources," Opp. at 28, using his patent "expertise" falls far short of the "independent knowledge" that is required, *see Winkelman*, 118 F. Supp. 3d at 423.

## III. RELATOR'S DERIVATIVE STATE LAW CLAIMS FAIL.

Though he argues that "State FCAs sometimes differ from their federal counterpart," Opp. at 28, Relator cites no differences in the state FCAs under which he asserts claims—save for the California and Texas FCAs—much less how those differences compel a different result.

## IV. THIS COURT LACKS PERSONAL JURISDICTION OVER THE IRISH ENTITIES.

Relator argues only that he has established specific jurisdiction and therefore has waived any argument regarding general jurisdiction. *Perkins*, 969 F. Supp. 2d at 177.

Relator has not established specific jurisdiction over Jazz Pharmaceuticals plc. That it is publicly traded on the NASDAQ and purportedly owns the "Jazz Pharmaceutical Medical

9

Information portal," Opp. at 30, is irrelevant because Relator's cause of action does not "arise out of" either point of contact, *United States ex rel. Banignan v. Organon USA Inc.*, 2012 WL 1190826, at *4 (D. Mass. Apr. 9, 2012). In addition, Relator's assertion that Jazz Pharmaceuticals plc "owns" the patents and participated in related IPR proceedings contradicts his own allegations, Dkt. 63 ¶ 20, and is premised on documents that cannot be considered for their truth, Opp. at 30.[3] *See also Starbrands Cap., LLC v. Original MW Inc.*, 2015 WL 13691435, at *4 (D. Mass. Aug. 14, 2015) (addressing company websites); *Betancourt-Colon v. Arcos Dorados P.R., LLC*, 2023 WL 6923380, at *2 (D.P.R. Oct. 19, 2023) (addressing SEC filings).

Nor has he established specific jurisdiction over Jazz Pharmaceuticals Ireland Ltd. Though that company owns the patents at issue and participated in the IPR proceedings at issue, Relator does not allege that it participated in any of the other aspects of the alleged fraud. Critically, he points to no employee of that company who had knowledge of the alleged fraud. *See* Dkt. 63 ¶¶ 153-60. Such "attenuated and indirect" contacts cannot establish specific jurisdiction. *Banignan*, 2012 WL 1190826, at *4 (citation omitted).

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Irish Entities for lack of personal jurisdiction under Rule 12(b)(2) and dismiss Relator's Amended Complaint with prejudice for failure to state a claim under Rules 12(b)(6) and 9(b).

---

[3] In his own Request for Judicial Notice, Relator asserts that this Court should not take judicial notice of the truth of any statement in the documents Jazz seeks judicial notice of because "some of the statements in those documents contain fraudulent misrepresentations." Dkt. 85. But Jazz is only asking the Court to take judicial notice of those documents for the purposes set forth in its opening brief, Dkt. 72, which do not include taking as true any of the alleged misrepresentations Relator identifies. And Relator does not otherwise dispute the content of those documents.

Dated: January 31, 2025                              Respectfully submitted,

/s/ *Jack W. Pirozzolo*
Jack W. Pirozzolo (Mass. Bar No. 564879)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Fax: (617) 223-0301
jpirozzolo@sidley.com

Jaime L.M. Jones (*pro hac vice*)
Matthew Bergs (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036
jaime.jones@sidley.com
mbergs@sidley.com

Kwaku A. Akowuah (*pro hac vice*)
Brenna Jenny (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Fax: (202) 736-8711
kakowuah@sidley.com
bjenny@sidley.com

*Attorneys for Jazz Pharmaceuticals PLC, Jazz Pharmaceuticals, Inc. and Jazz Pharmaceuticals Ireland Limited*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on January 31, 2025, the foregoing document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing.

            */s/ Jack W. Pirozzolo*
            Jack W. Pirozzolo