UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; THE DISTRICT OF COLUMBIA; GUAM, PUERTO RICO, and THE U.S. VIRGIN ISLANDS, <br><br>*ex rel.* LEONARDO S. SORGI, <br><br>           Plaintiffs, <br><br>    v. <br><br>JAZZ PHARMACEUTICALS PLC, JAZZ PHARMACEUTICALS, INC., and JAZZ PHARMACEUTICALS IRELAND LIMITED, <br><br>           Defendants. | Civil Action No. 1:21-cv-10891-PBS <br><br> Judge Patti B. Saris <br><br> **Leave to file sur-reply brief granted on Nov. 25, 2024 (ECF Nos. 60 & 69)** |

**PLAINTIFF-RELATOR LEONARDO S. SORGI'S SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

0I.   THE COMPLAINT PLEADS ALL ELEMENTS OF FALSE CLAIMS ACT LIABILITY UNDER INDEPENDENTLY SUFFICIENT THEORIES OF LIABILITY VALIDATED BY PRIOR COURT DECISIONS..............................................1

      A.   The Complaint Pleads Falsity ..................................................................................1

          1.   The Application for the '306 Patent is Itself a False Claim ............................1

          2.   False Statements and Material Omissions to the PTAB.................................2

          3.   The Complaint Pleads Fraudulent Inducement ..............................................2

          4.   The Complaint Pleads Express and Implied Certification..............................6

      B.   The Complaint Pleads Materiality ...........................................................................7

      C.   The Complaint Pleads Scienter .................................................................................7

      D.   The Complaint Includes Reliable Indicia that False Claims Were Presented..............7

      E.   *Janssen and Allergan* Are On Point............................................................................8

II.   THE PUBLIC DISCLOSURE BAR DOES NOT COMPEL DISMISSAL ...........................8

III.   THE STATE LAW CLAIMS SURVIVE ................................................................................10

IV.   THE FCA'S QUI TAM PROVISIONS ARE CONSTITUTIONAL .....................................10

V.   THE COURT HAS PERSONAL JURISDICTION OVER THE FOREIGN DEFENDANTS.....................................................................................................................10

**I.  The Complaint Pleads All Elements of False Claims Act Liability Under Independently Sufficient Theories of Liability Validated by Prior Court Decisions**

Jazz asserts that false statements are actionable "only if they were included with a false claim for payment." Reply[1] 1 (*citing New York v. Amgen, Inc.*, 652 F.3d 103, 110 (1st Cir. 2011)). Jazz ignores the plain language of the statute, which makes Jazz liable if it "presents" or "causes" a false claim to be presented. 31 U.S.C. § 3729(a)(1). The FCA also establishes liability for anyone who "makes, uses, or causes to made or used, a false record or statement material to a false or fraudulent claim." § 3729(a)(1)(B). And a "claim" embraces any "request or demand, whether under a contract or otherwise, for money or property." § 3729(b)(2)(A). Nothing in *Amgen* limits this plain language. Indeed, the court cautioned against interpreting the FCA to "impermissibly narrow the scope of liability for entities that cause other entities to submit claims." 652 F.3d at 110. False statements need not be made contemporaneously with false claims, or even to the paying agency: if "a false statement is integral to a causal chain leading to payment," liability properly attaches. *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 903 (9th Cir. 2017) (quotation marks omitted).

**A.  The Complaint Pleads Falsity**

**1.  The Application for the '306 Patent is Itself a False Claim**

First, Jazz presented a false claim by applying for the '306 patent family while deliberately withholding material prior art that would have prevented issuance of the patents. Opp. 5; ¶ 126. Jazz does not dispute that a patent application qualifies as a "claim" under 31 U.S.C. § 3729(b)(2)(A), because it is a "request" for a patent, which is "property."[2] Jazz "presented" its false or fraudulent patent application to the government, and is therefore liable

---

[1] Relator's opposition brief (ECF No. 84) is cited as "Opp."; Jazz's reply brief (ECF No. 86) as "Reply"; and the Amended Complaint (ECF No. 63) by paragraph (¶).

[2] Patents are property. *See, e.g.*, *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,* 584 U.S. 325, 334-38 (2018)*; Mission Prod. Holdings, Inc. v. Tempnology, LLC,* 587 U.S. 370, 375 (2019).

1

for the damages sustained "because of" Jazz's misconduct. *Id*. § 3729(a)(1); *see United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 227-29 (D.N.J. 2021).

Jazz's reply does not dispute the legal viability of this theory of liability—and thus implicitly concedes the point. Instead, Jazz contests only whether Relator sufficiently pleads that the '306 patent application was false or fraudulent in the context of arguing against fraudulent inducement. Reply 2-4. These arguments are addressed in subsection (3) below. None of Jazz's other objections apply to this theory of liability.

### 2. False Statements and Material Omissions to the PTAB

A critical part of Jazz's scheme involved making affirmative misrepresentations and material omissions to the PTAB when generic manufacturers tried to institute IPRs challenging the '306 patent. Opp. 9-11; ¶¶ 114-16. Jazz does not rebut Relator's arguments that these misrepresentations and material omissions to the PTAB provide an independent basis for FCA liability because they, too, allowed the '306 patent family to stand—and thus caused the presentment of false claims under § 3729(a)(1). But for Jazz's misrepresentations to the PTAB, generic entrants would have entered the market earlier (and not as "authorized" generics).

### 3. The Complaint Pleads Fraudulent Inducement

Jazz argues that fraudulent inducement applies only to contracts. Reply 2. Here, Jazz simply repeats its moving brief, adding only a citation to *United States ex rel. Yui v. Grifols USA, LLC*, 2021 WL 5827047, at *11 (S.D.N.Y. Dec. 8, 2021). But Jazz does not contest Relator's arguments that the statutory text, the Supreme Court's recognition of the FCA's broad reach, and well-reasoned appellate cases applying fraudulent inducement to non-contractual fraud, refute Jazz's narrow interpretation. Opp. 11. The citation to *Yui* is weak because the court there based its conclusion on a perceived dearth of examples, apparently unaware that both *Janssen,* 576 F. Supp. 3d at 228-29, and *Silbersher v. Allergan Inc.,* 506 F. Supp. 3d 772, 826 (N.D. Cal. 2020)*, rev'd on other grounds* 46 F.4th 991 (9th Cir. 2022), have confirmed that materially

indistinguishable allegations of patent fraud support fraudulent inducement liability. And just recently, the Fourth Circuit upheld a fraudulent inducement claim based on fraudulently obtained regulatory accreditation. *See United States ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, -- F.4th --, 2025 WL 365685, at *14-15 (4th Cir. Feb. 3, 2025).

Jazz contends that Relator has not sufficiently pleaded that Jazz engaged in "inequitable conduct." Reply 2. But the heightened standards for inequitable conduct—a judge-made affirmative defense in patent litigation—cannot displace the standards Congress mandated for FCA actions. Opp. 4-5; *see also Janssen*, 576 F. Supp. 3d at 230; *Allergan*, 506 F. Supp. 3d at 820. Jazz's only response is that when FCA claims "are predicated on underlying violations of law," the elements of such violation must also be pleaded. Reply 2. But Jazz's premise is wrong: Relator's claims are not predicated on inequitable conduct (a doctrine never mentioned in the complaint, or even permitted to be raised in an IPR). Instead, they are predicated on Jazz's use of false or misleading statements to obtain, defend, and assert invalid patents to block generic competition, thus inflating the government's payments. Even if Jazz made those statements without the specific intent required for inequitable conduct, they would still be actionable. *See* 31 U.S.C. § 3729(b)(1)(B) (FCA "require[s] no proof of specific intent to defraud").

Jazz mischaracterizes Relator's allegations as being mere arguments about what qualifies as relevant prior art, and what such prior art shows. Reply 2-3. According to Jazz, these are opinions that reflect "legal argumentation and possibility" (Reply 3) and so cannot support falsity. Jazz's argument is legally and factually wrong. It is legally wrong because even if Jazz's representations constitute opinions, it is black-letter law that such statements can still be actionable under the FCA. Opp. 10. It is factually wrong because the adverse event reports undisputedly constitute prior art. They clearly are under 35 U.S.C. § 102(a) (pre-AIA) because, *inter alia*, they evidence prior use of the claimed invention, and Jazz has never argued otherwise. Opp. 3, 10; *e.g.,* ¶¶ 59, 86 & n. 13, 88. Relator also alleges that Jazz was aware of these

3

reports—such that when Jazz represented to the Patent Office that it had disclosed all of the relevant prior art, despite not disclosing these reports, it knowingly made factually false statements. *See* Opp. 3, 5-6; *e.g.*, ¶¶ 52, 54, 57-60, 61-63, 68-86. If Jazz wants to dispute these factual allegations, it must do so later in the case.

Jazz cites *Rothman v. Target Corp.*, 556 F.3d 1310. 1329 (Fed. Cir. 2009), but that case merely states that a prosecuting attorney is permitted to make good faith arguments by reasonably "interpreting" prior art that is properly disclosed. That does not excuse an applicant or prosecuting attorney from *intentionally omitting* material prior art, contrary to their duties of candor and good faith. *See* 37 C.F.R. § 1.56(a); ¶ 46.

Jazz argues that Relator has not identified the specific individuals who believed the adverse event reports constituted prior art and then withheld them. Reply 3. First, the Complaint identifies individuals with knowledge. Opp. 17-18. Second, identifying specific individuals is not required. Opp. 7. Third, actual knowledge is not required: deliberate ignorance or recklessness suffice. *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023) (*citing* 31 U.S.C. § 3729(b)(1)(A) *and* Restatement (Second) of Torts § 526 (1976)). Thus, if Jazz, through its patent attorneys, executives, or agents, was "conscious of a substantial and unjustifiable risk" that its statements to the Patent Office and PTAB were false but submitted them anyway, FCA liability attaches. *Schutte*, 598 U.S. at 751. The cases Jazz cites are inapposite, because the allegations in those cases, for example, were "wholly conclusory and lacking any semblance of specific detail." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30 (1st Cir. 2004).

Relying on *D'Agostino v. ev3, Inc.*, 845 F.3d 1 (1st Cir. 2016), Jazz incorrectly asserts that Relator has not pleaded "but for" causation because the Complaint fails to show how the "omitted prior art would have caused the Examiner to reject the '997 application." Reply 4. But the allegations in *D'Agostino* were much weaker than Relator's. Because of the complexity of the FDA's premarket approval of medical devices in *D'Agostino*, the plaintiff equivocated on

4

causation, alleging only that the factors he complained about "could have" affected the FDA's approval. 845 F.3d at 7. That was not enough to allege but-for causation. Here, by contrast, Relator alleges that Jazz's misrepresentations misled the Examiner, and that if Jazz had been honest and forthright, the '306 patent family would not have issued at all (and would have been invalidated in the IPRs). *See, e.g.*, ¶¶ 23, 54-60, 93, 111, 114. Jazz does not refute that the alleged misrepresentations directly go to the heart of patentability and thus permit a plausible inference that the patents would not have issued if Jazz had been forthright. Opp. 9.

Jazz extrapolates from *D'Agostino* to argue that "official agency action" is needed before a relator can even *plead* causation in all fraudulent inducement cases. Reply 4. This argument overreads *D'Agostino*, which held that when the FDA, aware of the plaintiff's allegations, chose not to withdraw approval for a medical device, the plaintiff did not plausibly allege causation simply by saying that the alleged misrepresentations "could have" affected the FDA's decisions. *See* 845 F.3d at 8. Indeed, *D'Agostino* expressly limited its holding to the deficiencies "in this particular proposed complaint." *Id*. at 9. In other contexts, courts hold otherwise. Opp. 8-9.[3] *See also, e.g.*, *United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 421-22 (D.C. Cir. 2021) (crediting relator's allegation that the government would not have entered into contract but for the fraud as plausible, even though the contract had not been cancelled, and the government had continued making payments). *See generally* Opp. 16-17.

Even if Jazz's characterization of *D'Agostino* had force vis-à-vis cases alleging fraud on the FDA, the patent system is different. Unlike in the FDA context, where *D'Agostino* was concerned about courts second-guessing an expert agency balancing patient health and safety

---

[3] Page 9 of the opposition contains an error. The citation to *United States ex rel. Borzilleri v. Bayer Healthcare Pharms., Inc.*, 24 F.4th 32 (1st Cir. 2022), and the sentence preceding it were inserted erroneously and not caught during cite-checking. That case is irrelevant to this one. Relator apologizes and respectfully requests that the Court ignore that sentence and citation.

risks against benefits, the patent context implicates the courts' core competencies—and this Court does not need the Patent Office's concurrence to decide legal questions that implicate Jazz's patents. Indeed, Defendants do not deny that courts, including in this Circuit, routinely entertain *Walker Process* claims involving patents that have not been invalidated—or that courts are free to deem patents invalid in infringement litigation even if the Patent Office has not done so. Opp. 8; *see also Xitronix Corp. v. KLA-Tencor Corp.*, 757 F. App'x 1008, 1010 (Fed. Cir. 2019). Moreover, the Patent Office does not, as a matter of course, react to assertions made in private litigation—making it inappropriate to draw any inference from inaction.

### 4. The Complaint Pleads Express and Implied Certification

Jazz rehashes its argument that a false certification must be submitted in connection with a claim for payment, but it does not address Relator's argument that the plain language of the FCA supports liability when a false certification "causes" the submission or presentment of inflated claims, or is material to such inflated payment claims. § 3729(a)(1)(A)-(B). Jazz's listing of some of the '306 patent family in the Orange Book—through its false certification in Form 3542 that the patents could "reasonably be asserted" against generic competitors—is actionable because it was a false statement that caused the government to pay Jazz when it otherwise would not have; and was material to whom the government paid and how much it paid.

Jazz asserts that Relator waived an implied certification theory relating to Jazz's Medicaid Penalty Provision, which requires Jazz to provide the government with the average manufacturer price (AMP) of Xyrem. Reply 5. That is incorrect. Consistent with the Complaint, Relator argued that Jazz impliedly certified its AMP submissions were accurate, and its FSS prices were "fair and reasonable." Opp. 13 (*citing* ¶¶ 133, 136). These certifications were false because the prices Jazz reported were inflated through the assertion of the fraudulent patents. *Id.* (citing ¶¶ 138-39). With respect to "fair and reasonable" pricing, Jazz also fails to refute Relator's arguments that Jazz's representations about Xyrem's pricing were intended to ensure

6

fair and reasonable pricing to government direct purchasers, but instead were misleading half-truths because Jazz failed to disclose that its prices were unlawfully inflated. Opp. 13-14.

### B. The Complaint Pleads Materiality

Jazz essentially gives up on its materiality argument. Relator explained how the Complaint's well-pleaded allegations demonstrate that Jazz's misrepresentations and misleading omissions to the Patent Office were material to the patent's issuance, and its fraud was not only *intended* to, but actually *caused,* the government to pay unlawfully inflated monopoly prices for medicine, which are strong enough to support *per se* materiality. Opp. 14-16. Jazz's one sentence rejoinder that Relator's points are "conclusory" is not true, and the Court should follow the well-reasoned decisions in *Janssen,* 576 F. Supp. 3d at 229-30; and *Allergan*, 506 F. Supp. 3d at 827.

### C. The Complaint Pleads Scienter

The Complaint adequately pleads scienter, which can be pleaded generally without "proof of specific intent to defraud." § 3729(b)(1)(B); Opp. 17-18. Jazz does not refute this.

### D. The Complaint Includes Reliable Indicia that False Claims Were Presented

Jazz never refutes that the patent application itself is a false claim and has been specifically identified; this reason alone is sufficient to reject Jazz's particularity argument. Opp. 18-19. Moreover, contrary to Jazz's assertion, the Complaint alleges that *every* claim for payment under the fraudulent inducement theory is false or fraudulent. Opp. 19. When Jazz says that Relator acknowledges that "less than 100%" of Xyrem claims were tainted by fraud (Reply 6), it is referring to the allegations in ¶ 90 concerning the portion of the market that generics *would have captured*. That does not set the universe of false claims, because Jazz *actually* kept 100% of the market during its period of unlawful monopoly, and even the 10% that Jazz may have lawfully retained (the brand loyalists) constitute false claims because they incorporated unlawfully inflated monopoly prices. Even so, Relator does not need to show a 100% false claims rate to establish "reliable indicia" of fraud. Opp. 18-20. Finally, Jazz is wrong in saying

7

that Relator has not pleaded which state Medicaid programs paid false claims. Counts 2 through 34 (¶¶ 169-555) do just that, and ¶ 9 adds that Medicaid paid $143 million and $130 million for Xyrem in 2020 and 2021, respectively.

### E. *Janssen* and *Allergan* Are On Point

*Janssen,* 576 F. Supp. 3d 212, and *Allergan,* 506 F. Supp. 3d 772, are indistinguishable cases validating the merits of Relator's theory. Jazz says that *Janssen* is inapplicable because a prior finding of invalidity was "critical" to the court's holding. Reply 6 (*citing* 576 F. Supp. 3d at 231). Nothing in the decision, much less the page to which Defendants cite, supports Defendants' characterization. Indeed, a prior invalidity decision is not required at all. *See* Opp. 8.

Jazz also asserts that *Janssen* is different because the complaint there alleged that Janssen's misrepresentation was the single most reasonable explanation for the Patent Office's approval. But there is no requirement that a complaint plead that, and nothing in *Janssen* suggests that such allegation was particularly important to the court's holding. In fact, *Allergan* did not require such an allegation when reaching the same conclusion. Moreover, Relator's allegations in this case are *even stronger* than a "single most reasonable" explanation, because the Complaint alleges that the relevant Xyrem patents would not have issued at all (or would have been invalidated) but for Jazz's misrepresentations, because they taught *precisely* what the Examiner deemed, in the Notice of Allowance for the '306 patent, to be missing from the prior art. *See, e.g.*, ¶¶ 23 (disclosure of omitted prior art would have "precluded" issuance); ¶¶ 54-60 ( "but for" causation); ¶ 92 (omitted prior art directly material to Notice of Allowance); ¶ 93 (patents invalid based on omitted prior art); ¶ 111 ( disclosure would have "precluded" patent issuance); ¶ 114 (but for Jazz's misrepresentations, PTAB would have invalidated the patents).

## II.    The Public Disclosure Bar Does Not Compel Dismissal

Jazz's reply simply repeats its discredited assertion that fraud was "in plain sight." Reply 8-9. But the Ninth Circuit's recent decision in *United States ex rel. Silbersher v. Valeant*

8

*Pharmaceuticals International, Inc.*, 89 F.4th 1154 (9th Cir. 2024), and Jazz's own concessions, demonstrate why this is not so. Jazz acknowledges that none of the well-funded, knowledgeable generic companies that sought to challenge the patent discovered and alleged the critical prior art that Jazz knew about but failed to disclose to the Patent Office. Opp. 23. Relator is the first to do so, confirming that the fraud was not actually in plain sight as Jazz pretends. As *Valeant* recognized, Relator's work revealed fraud that was previously hidden from the government and everybody else, confirming that his allegations are not "substantially the same" as those transactions disclosed in any public forum under the statute. 89 F.4th at 1168 ("scattered qualifying public disclosures may each contain a piece of the puzzle, … when pieced together, they fail to present the full picture of fraud.")

The Complaint alleges numerous other material aspects of Jazz's fraud not included in any of the public disclosure channels in the statute. These include: (1) Par's response to Jazz's Citizen Petition—which is an adversarial, administrative proceeding to which the government is not a party, that is excluded under § 3730(e)(4)(a)(i); (2) the allegations relating to the IPR, which is similarly an adversarial, administrative proceeding not within the public disclosure bar; and (3) the Pardi article, which is also not a qualifying public disclosure channel, because it is a scientific article. *See* Opp. 24, 25-28. These require denial of Jazz's public disclosure argument.

Even so, Relator qualifies as an original source because his specialized knowledge is independent of and materially adds to the public disclosures. Opp. 27-28. Jazz incorrectly asserts that Relator did not "voluntarily" provide his information to the government. Reply 9, *citing Omni Healthcare Inc. v. U.S. Oncology, Inc.*, 2024 WL 4751635 (2d Cir. Nov. 12, 2024). Jazz gets the holding wrong. In *Omni*, the court held that there was no "voluntary" disclosure because the relator did not make a separate pre-filing disclosure separate from the mandatory disclosure described in § 3730(b)(2). Relator's complaint confirms that he made the earlier "voluntary" disclosure described in § 3730(e)(4)(B). ¶ 23.

9

### III. The State Law Claims Survive

Jazz does not show why any particular state's claim should be dismissed other than the California IFPA (as opposed to FCA), and Relator provided illustrative examples for two large states (CA and TX) refuting Jazz's conclusory assertion that all state claims should be dismissed.

### IV. The FCA's Qui Tam Provisions Are Constitutional

Jazz does not provide any reply to Relator's arguments. The Court should hold the statute constitutional for the unrebutted reasons set forth Relator's opposition. Opp. 28-29.

### V. The Court Has Personal Jurisdiction Over the Foreign Defendants

Jazz does not dispute that Jazz Pharmaceuticals Ireland Ltd. not only owns the fraudulent patents, but it asserted them to exclude generic competitors in the U.S., which constitutes a material part of the fraudulent scheme violating the FCA. Opp. 29-30; ¶¶ 20, 112, 116, 118, 122. That is sufficient to establish jurisdiction over this entity, *see United States ex rel. Silbersher v. Valeant Pharms. Int'l, Inc.,* No. 20-16256, 2023 WL 4946736, at *2 (9th Cir. Aug. 3, 2023).

Jazz Pharmaceuticals plc also played a role in the fraud in the United States. The Complaint identifies Jazz Pharmaceuticals plc CEO Bruce C. Cozadd[4] as failing to disclose material prior art to the Patent Office. Opp. 6; ¶ 154; RJN Ex. A, at 22 (demonstrating Cozadd's knowledge of the adverse reports prior art). Jazz says that the documents for which Relator seeks judicial notice cannot be considered for their truth, but Jazz does not deny their accuracy. There is also no contradiction with the Complaint, because Jazz Pharmaceuticals plc considers itself the owner of the relevant patents and acted in the United States in that capacity, confirming the allegations that Defendants acted in concert to cause the submission of false claims. ¶ 20.

### CONCLUSION

Defendants' motion to dismiss the Amended Complaint should be denied.

---

[4] Mr. Cozadd is listed to testify in the antitrust suit against Jazz (where Jazz Pharmaceuticals plc remains an active party). *In re Xyrem Antitrust Litig.*, No. 3:20-md-02966-RS-SVK (N.D. Cal.), ECF No. 871-2.

Dated: February 14, 2025

/s/ Ana Munoz
_____
By: Ana Isabel Munoz
(Mass. Bar No. 569233)

**ZALKIND DUNCAN & BERNSTEIN LLP**
65A Atlantic Avenue
Boston, MA 02110
Telephone: (617) 742-6020
AMunoz@ZalkindLaw.com

**HERRERA KENNEDY LLP**
Nicomedes Sy Herrera
(*admitted pro hac vice*)
Shawn M. Kennedy
(admitted *pro hac vice*)
Bret D. Hembd (admitted *pro hac vice*)
Laura E. Seidl (admitted *pro hac vice*)
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
NHerrera@HerreraKennedy.com
SKennedy@HerreraKennedy.com
BHembd@HerreraKennedy.com
LSeidl@HerreraKennedy.com

**SPARACINO PLLC**
Tejinder Singh
(*admitted pro hac vice*)
1920 L Street, NW, Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
Tejinder.Singh@Sparacinopllc.com

**POLLOCK COHEN LLP**
Adam Pollock (*admitted pro hac vice*)
111 Broadway, Suite 1804
New York, NY 10006
Telephone: (212) 337-5361
Adam@PollockCohen.com

*Attorneys for Plaintiff-Relator
Leonardo S. Sorgi*